Morning. Rob Harley for Appellant. I'm going to focus my arguments on two of the five issues we raised in our opening brief, the invalid Faretto waiver and also the inadmissible gun evidence. And I think particularly significant in our argument that the Faretto waiver was invalid is this admonishment by the judge as that waiver is being taken about the understanding of the appellant who said he felt it was a one-year maximum, and then when you consider the guidelines, it would be anywhere from zero to six months. The U.S. attorney in this case indicates that he did file a trial memorandum about one month later, correctly stating that there was a five-year maximum to this threatening of a federal... No, I don't think that's correct. Are you talking about the day of the trial or the memo where he said it was three years? No, I thought I read in his reply brief that he filed a trial memorandum correctly stating the maximum punishment was five years. Well, you thought you read it in the brief or did you look at the record? Well, I think what it said was it was five for one count and three for another, right? There were three dates. It was acknowledging, as I recall, an error in the first one that it was one. That's correct. In fact, it was five on one and three on another. That's correct. But at any rate, the correction took place a month after the Faretto waiver went down, is my point. And there was no correction by way of dialogue or colloquy between the judge and the appellant. And certainly the appellant in this case showed that he was laboring under that false impression about the maximum permissible punishment when he was convicted on count two and showed up for sentencing and all of a sudden was scratching his head and saying, why am I looking 41 to 51 months in the guideline range when I initially thought it was zero to six months because it was a one-year maximum? So obviously this trial memorandum that was filed one month later didn't correct the erroneous impression the appellant had when he was convicted. And so the question is, do you have to cover the three elements, the nature of the charges, the possible penalties and the dangers and disadvantages of the trial? Can you explain to me how the Mr. Benke is the U.S. attorney? Yes, sir. He said the day of the trial. And also, I just wanted to point out that although we did not file an amended or supplemental trial memorandum, the original trial memorandum and the section related to the possible penalties was in error. The trial memorandum from the first trial stated the maximum possible penalty, I believe, was one-year imprisonment, a maximum of three years. The correct maximum is a maximum of five years. That's what he said on the day of trial. And that's a month after the Feretta waiver took place. Is that what you're referring to? Yes, sir. And I'm saying that — And when was the memorandum that corrected this and said it's five years? My understanding was that was — I don't want to know about your understanding. When was that provided to the defendant? April 17th, 2001. And what was the date of the second trial? It followed immediately thereafter. It was April 2001, the second trial. Okay. Now I'm confused. This is what Judge Reinhart just read was an oral statement in Erskine's presence, right? Yes. In other words, the although we did not file, was that an oral or a written statement? Where he said the correct maximum penalty in this case pursuant, blah, blah. I think that — I understood that to be an oral statement. Yes. It's a trial. Okay. At trial. Now, was there another trial memo that also reiterated that? Was that the question? Yes. Was there another trial memo? Was that statement of the correct maximum put in writing in a writing that was furnished to the defendant? I thought it was. Perhaps I misread it, but I thought it was April 17th. Okay. I — we'll get it straight from the — So at any rate, it took place after the Feretta Waiver went down, where there — That we understand. Okay. And my argument is there's got to be three basic elements covered during this Feretta Waiver. And my reading of the transcript shows that the nature of the charges was not adequately covered, because at the minimum you got to discuss the elements of the offense, also the defense that applied thereto. The possible penalties, that was five years and $250,000. Well, the Feretta Waiver colloquially shows that the defendant understood it was one year. And the judge said correct, right? That's correct. And then the dangers and disadvantages of self-representation, yes, there was compliance or there was some compliance with the dangers and disadvantages of self-representation. But I would argue that that is insufficient showing of a knowing, voluntary, and intelligent waiver of the Sixth Amendment right to counsel. And particularly, I am focusing on a footnote, 13, at page 624 in U.S. v. Hernandez, that's a Ninth Circuit case, that indicates — well, first of all, I say we don't have to go there because this is not one of those rare cases or limited exceptions. But in that footnote, it indicates in rare cases and limited exceptions, where the three elements are not discussed in open court or correctly discussed, the court can search the record for evidence that shows that the waiver was informed. But I would indicate that this is not one of those rare cases or limited exceptions. Those rare cases are when there's minor omissions, but there's still substantial compliance. And here we have an affirmative misunderstanding, and there's not substantial compliance. The government, at page 29 and 30 of its brief, indicates that there suggests there might be a plain error analysis, and I'm arguing Ferretta violation is a structural error. And also, as far as the assistance of advisory counsel, that is a fact that this Court can review in determining whether or not in those rare cases and limited exceptions, whether or not a valid Ferretta waiver took place. And my argument to that would be the record here shows that Mr. Erskine did not want his counsel present. It was pretty much at the suggestion or even insistence of the trial judge, indicating that he should be held in a standby capacity and assist Mr. Erskine during the course of the second trial. And I recognize that's one of the factors you can look at when you're searching the record to see whether this Ferretta waiver was knowing, voluntarily intelligent. But I would suggest in this unique circumstance where Mr. Erskine is standing up there and saying he does not want to stand by attorney, I think it's unfair to use that to show that it's a knowing, voluntary, intelligent Ferretta waiver. And then moving on to the inadmissible gun evidence. As the Court recalls, and I'd like to put this in context, there were two trials. The first trial was in December 2000. Count 1 was a threat on July 11, 2000, where he was found not guilty. Count 2 was a threat to a Federal officer on July 21, 2000, where there's a hung jury. And then the second trial started in April 2001. Old Count 2 was reamended in the superseding indictment to Count 1, and that's the threat that took place on July 21, 2000. And then they added a second count to Agent Payne, and that's on February 26, 2001. He was found guilty of that. And the evidence we feel is inadmissible was this gun evidence that took place, testimony was Mr. Erskine went into a gun shop on June 3, 2000, and ordered a gun. He returned to pick up that gun on July 15, 2000, and the dealer explained to him he can't get a gun, and he never returned. The government offered that as 404B evidence as circumstantial evidence to show a plan, preparation, and intent to retaliate. The Court didn't admit on that grounds. The Court admitted it as direct evidence of Mr. Erskine's intent because it was inextricably intertwined in the offense of which he stood convicted on February 22, excuse me, 26, 2001. And why is that, Ron? Well, because the incident took place on June 3rd and July 15th. The conviction was on February 26, 2001. That's seven months later. And in order for this to be classified as direct evidence that's inextricably intertwined in the crime itself, it has to take place at or near the February 26, 2001 date. Here we have an attempt to purchase a gun seven months earlier. So that's way too remote. In order to come in pursuant to that theory, it has to be contemporaneous with the crime itself. That's what the case law suggests. So I'm arguing under that theory it should not come in as direct evidence because it's not inextricably intertwined because this took place seven months earlier. Moreover, it's not even 404B evidence. And that's not the theory upon which it was admitted. That's what the prosecution attempted to admit it on, but the judge admitted it pursuant to the inextricably intertwined theory. And even under 404B, I'm suggesting that because it's so far back in time, seven months, it's too remote. It doesn't show a plan preparation because that was all terminated on July 15th, 2000, seven months earlier, when he went back in to attempt to purchase a gun and he was told that he's not going to get it. And as far as the record on appeal is concerned, there were no further attempts to purchase any weapon beyond that 7-15-2008. So unless there's more evidence, more recent evidence linking this 404B evidence to the crime he was convicted of on February 26th, 2001, I would say its relevancy was miniscule. It wasn't. It was tried on two counts. Yes, sir. And what was the earlier count? Well, that's July 21st. That's a lot closer in time. Well, was it relevant for that count? Yes, sir. It could have been arguably relevant. So your argument is that the judge should have said you can consider this for count one but not for count two? Well, that would have cured the prejudice I'm arguing here because count one, the offense took place six days after he was told he couldn't purchase a gun. So it's closer in time. Okay. So if it's relevant for that and not for the other, did anybody ask the judge to say consider it for one count but not for the other? Nobody did because at that time he was still facing two counts. Trial counsel down below argued against it. Then what's the – why should it not have been admitted? Well, I'm arguing it shouldn't have been. That was at the first trial. Are there two trials? Yes. There's two trials. None of this stuff came in the first trial. It's only the second trial, my understanding is, that this gun count – excuse me, this gun evidence came in. At the second trial? Yes, sir. And the count one was no longer in the case? No, there were two counts at the second trial, right? Count one was – this is the first trial. Count one was not guilty. Count two in the first trial was a hung jury. Then in the superseding indictment, count two in the first trial became count one in the second trial. Then they added a second count. Well, let me make my question clear because I think we're all a little confused by this. My question was at the second trial. Yes, sir. The relevance of the purchase of the gun, you've argued it's not relevant to the second count, the one on which he was convicted. That's correct. And so my question to you is, is it relevant to the first count, the one on which he was not convicted? Your Honor, I concede there's a stronger argument for relevancy as to count one. Okay. And if it was relevant to that count, then it would – it could be admitted into evidence. The only problem is if somebody said limit the evidence to the relevant count. That's correct. But somebody has to request that. Well, I would – that's true. The – and again, this is a pro-per defendant. Well, that's right. Nobody ever said it was a good idea to take advantage of Ferreira. All right. But I think he did get out the objection to both counts. So the fact that it might have been arguably relevant to the count that there was a hung jury on and eventually dismissed, that's fine. I think when you're assessing prejudice up here, you have to look at the record on appeal and there is – Well, before you assess prejudice, you mean your prejudice as an element of the question of admissibility. Right. I mean, it's – All right. But if it's – it is admissible because it's relevant to one count. Well, that's – it's admissible, but there should have been an instruction, because I'm saying no matter – under Muta theory –  That's what I'm saying. So your real objection is there was no instruction to limit the use of it. Of it to the – to the first count as opposed to the second count. Right. And that's why I have this argument up here, because fortunately there was a hung jury and the first count was dismissed, where my argument has less force. So I'm suggesting because of the extent – But you can't look at the question of whether evidence is relevant when introduced at a trial. You can't look at that relevance based on which counts he is convicted of or acquitted of. It's either admissible or it isn't, and it probably is admissible, at least for the first count. And then if you want to limit the – tell the jury that they can only consider the evidence as to one count instead of both, somebody has to suggest that, because it is admissible, as long as it's admissible for any count. Okay. I do hear the court. I'm not conceding that it was admissible for either count, but assuming arguendo, that the court feels it was admissible because of the close connection in time to the first count, because there was no limiting instruction suggesting that, it should be only limited to the first count. I think when we're analyzing the prejudice in this case to the second count, it shouldn't have come in. There was no limiting instruction. The defendant did cover his basis, even though he's pro per, and he did not argue it should be limited to one count. I think he preserved the issue for appeal by objecting that it shouldn't come in for either count. So obviously, if he – he should have been more astute and said, well, assuming arguendo, you overrule my objection to both counts, at least limit it to the first count, he would have covered his basis. But I think this pro per defendant did as much as he could to preserve this issue on appeal. So here we are assessing prejudice, and in relation to this gun evidence, as it relates to the second count, which took place seven months later. And I don't think the U.S. attorney in his brief has shown that it's more probable than not harmless, and it's his burden to show that, because gun evidence, like gang evidence, is quite prejudicial. People have strong feelings about gun evidence one way or the other. So I don't think the Court can assume that you get to the issue of prejudice, hold that it was harmless under the circumstances, particularly in Vaughn, particularly since it was somewhat of a closed case, because the jury did hang up on a pro per on count one. So it wasn't a slam dunk by any stretch of the imagination. So that's why we're asking the Court to find that this was prejudicial, it was erroneously omitted as to count two, and a reversal should be required. But more fundamentally, I feel that we should win on the structural error issue of the invalid Feretta waiver. Unless the Court has any questions, I'm going to close. Thank you. Good morning. May it please the Court. Jerry Bente for the United States. Good morning, counsel. I want to begin by clarifying some of the factual questions that arose during Appellant's argument. First, I want to address the issue concerning the sequence of events related to the advisement of the maximum penalty on the Feretta issue. After the Feretta colloquy wherein the defendant waived his right to counsel and invoked his right to represent himself, on the first day of trial, as the Court has already pointed out, in open court, government counsel advised the defendant and the Court that the correct maximum penalty for the offense was five years' imprisonment. But this was a month after the waiver. Yes, Your Honor, that's correct. It was approximately a month after the waiver. It occurred the morning of trial before jury selection began. That advisement was an oral advisement in open court. There was no additional written trial memoranda filed by the government. The advisement was only an oral advisement. Just to go back in the history a bit, there had been – prior to that, there were two things. There was at the Feretta hearing, which the government was not present at, I gather, which is another complication with this process. So the government didn't know that – the judge didn't ever tell the defendant what the sentence was. The defendant told the judge. And the defendant said it's one year, and the judge said correct. I don't know if the government got a transcript of that or not, but in any event, that's what occurred. The second thing that occurred was that there was a memorandum for the government that said the sentence is three years. And then the third thing that occurred was the day of trial, when you made the statement in the presence of the defendant that the sentence is five years. Is that correct? Yes, Your Honor. During the first trial, while a defendant was represented by the deputy Federal Public Defender, prior to the first trial, the government filed a trial memoranda that incorrectly stated that the maximum penalty for the offense charged was three years' imprisonment. After the mistrial was declared and before the second trial, the defendant requested to represent himself. During that colloquy, the judge asked the defendant what the maximum penalty was, and the defendant stated that the maximum penalty was one year. And as Your Honor points out, the judge replied correct. All right. Now, why isn't that fatal in terms of the Feretta process? It's not fatal in the Feretta process because, as the case law of this circuit makes clear, what is important is to look to the entire record to determine what the defendant understood before the trial began. And while the record does indicate that at the point that the defendant made the Feretta waiver, he understood the penalty to be one year, and that was incorrect, prior to the trial beginning in open court, the defendant was advised that the correct maximum penalty was five years' imprisonment. Well, hold on a second. You're assuming a lot. You were at the trial and you were trying to state? Yes, Your Honor. Okay. All we have to go on is the record. And after you made your statement, which is appreciated, the court responded, all right, thank you very much, and proceeded with the case. Now, the district judge is nothing on the record that Erskine heard what you said, understood what you said, re-evaluated his decision to represent himself. It seems to me that one of the critical elements under clearly established Supreme Court, I know you're not, this is not habeas, but still, if we want clearly established, it's as clearly established as anything just that one of the critical elements in a decision-making process would be to know the penalty that you're facing. And it seems material beyond doubt to me that a decision of someone to represent themselves where they're rolling the dice on a one-year as opposed to a five-year is quite material. And I am very troubled with the record. I think Judge Takasugi did a very admirable job on everything else in explaining all of the dangers. This is not someone who blew off the process. I don't mean to suggest that at all. But what I am very concerned about, and as Judge Reinhart said, apparently you all weren't at the original Ferretti hearing, is that this guy was operating under a gross misapprehension of what his exposure was. And, indeed, if we are going to look at the entire record, I believe there's evidence at the sentencing hearing where he thought the maximum was set. The maximum here is three years. So that's at the end of trial. So looking at the whole record, how can we assume that this person who exhibits fantasies and a real disturbed mind made a knowing and intelligent waiver here? The government agrees with the court that knowledge of the penalties a defendant is facing when he engages in a Ferretti waiver is a material issue. And certainly the preferable course would have been for Judge Takasugi to correct the defendant's mistaken belief at the Ferretti waiver. However, and as the court points out, the government was not present during the Ferretti colloquy and did not receive a copy of the transcript of that colloquy until this appeal was filed. Prior to trial, however, I had noticed that the statement of the maximum penalty in the first trial memoranda was incorrect. And in an effort to make sure that everybody understood that the three-year statement that the government offered in its trial memorandum was incorrect, I informed the defendant in the court in open court of the maximum penalty. Your Honor is correct that after I advised the defendant of the maximum penalty on the first day of trial, no one did ask the defendant whether he understood and in light of that new information whether he wished to continue representing himself. Well, nor did the judge say. I mean, you know, your opponent in court may say a lot of things. The defendant under Ferretti is entitled to be told by the court. Now, the court can say to you if it wants, will you advise the defendant and sit there and listen and sort of confirm what you say? But because your opposing counsel gets up and says something, why should this defendant assume that that's right? It was told once by the U.S. attorney it was three years, once by the judge it was one year. Now the U.S. attorney on the day of trial says it was five years. The judge doesn't say anything to him. Why should he assume that his opponent in the trial is correct? Your Honor makes a very good point in that the way the sequence of events unfolded, it isn't necessarily a correct position to assume that the defendant was going to believe what I said over what the judge had already told him. But in looking at the issue of Ferretti, the defendant did have the ability at that point, if he was concerned about the prospect of the five-year maximum penalty, and if that was going to affect his decision to represent himself, he did have the opportunity to speak up and say to the judge, hey, wait a minute, Your Honor. You told me a month ago that ---- Wait, wait, wait, wait. I've been burned enough times by records where I didn't put on the record. I got burned in front of a jury for a question that I asked and got answered. Both of us laughing. Got argued to the jury as if it were a straight question and a straight answer, because the histrionics of the courtroom were not, or in that case the deposition, were not on the record. So I come back to the record. All we have is your statement on the record and the judge saying thank you. There is nothing to tell us that Mr. Erskine was paying attention, that he wasn't buried in his books, that he wasn't drifting off on a fantasy at that point. There is no confirmation on the record, either by you asking the court to confirm that Mr. Erskine has heard what you've said. There's no written documentation that was put in that was put in front of him so that at least he got a copy of it and we know that he was advised. There is an oral statement, and that is what bothers me here. You may be absolutely right that he heard it perfectly and should have said something, but the whole purpose of a Ferretta inquiry is to confirm on the record that the self-representing defendant knows precisely what he's engaged in, and you jumped the maximum penalty on him by four years over what he originally understood and what whoever filed the original trial memo had said. And that was a written document, whereas this was oral. So I'm really troubled by the notion that we should say, well, he had the opportunity. I think that's a serious problem. Counsel, I've got the same concerns, and I just wonder, what is your best authority for the proposition that we can either waive strict compliance with Ferretta or somehow discount the element about accurate knowledge of his penalty? I think the best authority for that lies in two cases. The first would be United States v. Lopez-Osuna. The second is United States v. I believe it's pronounced B-O-L-O-U-G-H. In that particular case, this Court pointed out that if the court omits an advisement to a defendant in a Ferretta colloquy, that in order for the Ferretta waiver to be valid, the record has to show that if not advised by the judge, the defendant was advised by some other source during the proceedings prior to trial of the elements required for a Ferretta waiver. In United States v. Lopez-Osuna, at the time of the Ferretta waiver, the Court asked the defendant about the elements of the offense, asked the defendant if he understood the elements of the offense, and the defendant stated clearly no. Yes, but in Lopez-Osuna, there was what we went back and found was that before the Ferretta hearing, he had twice been advised of the correct information. Isn't that correct? The opinion in Lopez-Osuna, I believe, states that there was discussion of the charges prior to the Ferretta waiver. It's prior. Prior. And it says he really – what it says is he really understood. He just disagreed, is what the case says. He said no, but they – we said in the case what he was really saying was he didn't agree with that, with the charges. But he didn't – it wasn't that they didn't tell him. He just didn't like it. It seemed in reading Lopez-Osuna that the key fact in that case was that on the day of trial, after the Ferretta waiver, the defendant was advised of each of the elements of the offense that he was facing. Okay. Well, I think we've all read that, and maybe we read it a little differently as to what the key fact was in that case. Okay. In response to Your Honor's question, though, I believe that those are the two best authorities that the government has for this position. Okay. Well, I think those – you know, the cases are all there. They're all briefed. The issue is fairly clear. And I've got to say, you did try to straighten it out at the district court. But whether that was a good enough try is another question. I recognize that. And I'm sympathetic to everybody who gets involved in a Ferretta case. Okay. Thank you, Your Honor. Thank you. Moving on from that point, the next issue that I want to address is the issue that the government raises in its brief concerning the application of the plain error review standard. Assuming that the Court does determine that error occurred in the defendant's waiver of his right to counsel and that he did so not knowing of the three elements required under Ferretta, the government would urge this Court to apply the plain error standard of review under Rule 52 and determine the – Even as to the Ferretta issue? Yes, Your Honor. On the theory of what? That there was no – it was never raised? No objection? Never presented? Yes, Your Honor. Under the theory that at the time that the Ferretta colloquy took place, the defendant was represented during that proceeding by two public defenders who were present during the proceeding who were there when the misstatement concerning the maximum penalty took place and sat silent. And what's your best authority for the fact that you review Ferretta error under plain – under plain error? I'm not aware of any authority that applies the plain error standard of review specifically to a Ferretta situation. What the government is – I don't think that. I don't believe there is, Your Honor. What the government is asking is that by analogy that the Court look to the United States Supreme Court opinion in U.S. v. Vaughn. Wait a minute. I want to understand. You're saying that the plain error would be at the original Ferretta hearing because there were two public defenders there or at the time when you made the statement on the day of trial? In other words, when are we invoking these standby lawyers so that we decide that we should apply plain error? That would be at the Ferretta colloquy. The first one? Yes, Your Honor. Now, what about your responsibility to have made the record when you made the correction on the record since you weren't there at the original, what weight should we in that on the public defenders who had been put into the background by Mr. Erskine, your obligation to create the record, if you will, that the defendant understood it when you, being sensitive to the issue, surfaced it on the day of trial? You're saying they should have said something about the correct penalty at the original hearing. Why wouldn't the same argument then turn around and apply, well, if you're concerned about it, then why didn't you at the hearing make sure that Mr. Erskine knew exactly what he was going to get at confirmation? I believe the correct analogy would be to the Rule 11 colloquy that was addressed in United States v. Vaughn. When you're in a Rule 11 situation, the government is present and the government is able in that situation, as well as the defense attorney, to see and hear the error or omission that takes place during the Rule 11 colloquy. Yet the Supreme Court has held that despite the fact that government counsel also has the ability to correct the error, that does not relieve the defense attorney as well of speaking up to correct an obvious error that occurs. Because of that, the Supreme Court has held that in the Rule 11 context, plain error standard should apply. The government is asking by analogy for this Court to reach the same conclusion in this context. And because defense counsel during the Feretta colloquy did not speak up to correct the error, plain error review should apply. And if the Court applies the plain error standard in this context, then the government believes that it is appropriate to look to additional factors, specifically information that was imparted to the defendant immediately after the trial. The PSR was disclosed to the defendant that clearly stated the maximum penalty he was facing for the offense was five years' imprisonment. When was that, though? The PSR was disclosed in October 2001, several months after the trial had occurred and approximately a month and a half or two months prior to sentencing. You're saying that there is no court that has ever accepted the plain error standard, but you think we should, because of Vaughan, by analogy, adopt that now? Yes, Your Honor. And Rule 52 clearly states that errors that occur in the trial court that are unobjected to are subjected to the plain error review standard. Well, we already do a form of that under Lopez. I mean, it seems more relevant than looking to what he may have been told after the damage is done at the end of trial. We do look, under Lopez's sentence, we did look and held against him that at a prior hearing, before he made his forerunner decision, he had the relevant information. I don't understand how you would then say that it was sufficient that he was told something after the trial. How does that help your case at all? The point the government is making is that when you look at the record as a whole, under the plain error standard, the issue is, had the defendant been told the proper maximum penalty at the time he made his forerunner waiver, would he have elected otherwise? Would he have declined to represent himself? And the record in this case shows that after he chose to represent himself, there were at least two occasions, one in open court on the day of trial and once when the PSR was disclosed to the defendant wherein he was advised of the maximum penalty. Right. But the PSR came after the trial. Yes, Your Honor. So what good would it have been? You're saying at that point he should have moved for a mistrial? No, Your Honor. What I'm saying is that at that point, he was still facing sentencing on the matter. He had not. He did say sentencing, didn't he? They keep changing the numbers on me. He said that I thought it was three years now, and now they tell me it's five. Are you saying that even after the PSR was delivered to him, which showed the five-year maximum, that somehow that – what rights would that vest him at that point? He's already been tried. He's already exercised his Faretta rights based on a false premise. What's left that he can get out of that at that point? Well, what could he have done to protect his rights at that point? At that point, when he was made aware that he was facing a possible sentence of five years in prison for his crime, he could have gone back to the trial court and told the trial judge that the stakes are a lot higher than he originally thought. If that was the case and he didn't want to represent himself further, he wanted a lawyer with him to fight this maximum penalty at sentencing. But that's at sentencing. He couldn't get a new trial. You're not arguing he'd get a new trial or anything, could you? Or are you? Maybe you are. No, Your Honor. The government – You're trying to say that because he – once he did know the policy, that it was five years, he continued to represent himself. Ergo, we should assume that if he clearly understood it at the Faretta hearing, he still would have made the same decision. And if he had understood it, as you think he did at the day of trial, with all of those opportunities, he still – given all the correct information, he still would have gone ahead with the same decision. Yes, Your Honor. That's the government's position. Okay. Thank you, Counsel. Thank you, Your Honor. All right. Do you feel – do you want to add more? No, I think the issue is dropped there unless the Court has any further questions. Thank you, Counsel. The case is – the argument will be submitted and the Court will take a brief recess before the next case.
judges: Reinhardt, O'scannlain, Fisher